04-1835-CBS

## AFFIDAVIT OF SPECIAL AGENT NICOLE M. COSOLA

I, Nicole M. Cosola, having been duly sworn, do hereby depose and state as follows:

1.    I am a Senior Special Agent with the United States Department of Homeland Security, Bureau of Immigration and Customs Enforcement (ICE), formerly (INS), and have been so employed since May 1996.  Among other duties, I am assigned to investigate the manufacture and sale of fraudulent Bureau of Citizenship and Immigration Services Resident Alien Cards, Form I-551 (hereinafter "green cards").

2.    I am familiar with the various criminal statutes which make it unlawful to manufacture and sell green cards, including Title 18, United States Code, Section 1028(a)(1)-(6) (producing identification and false identification documents); and Title 18, United States Code, Section 1426(b) (using and selling false naturalization, citizenship and registry documents).

3.    I have received training in the investigation of methods and practices used in the manufacture and sale of fraudulent green cards, passports and other documents used to prove citizenship or identification.  As a Special Agent with ICE, I have been involved in over fifty investigations involving the manufacture and sale of fraudulent green cards, passports and other documents used to prove citizenship or identification.  Based on my training and experience in this and numerous other fraudulent document investigations, I am familiar with the tools, equipment and materials necessary for the manufacture of counterfeit green cards and social security cards.

4.    From my training and experience, I know that persons, often aliens, manufacture and distribute counterfeit green cards and social security account number cards ("SSANC") and other false identification documentation.  The counterfeit documents are then distributed and sold to aliens who are illegally in the United States.  I am aware that the common types of tools, equipment and materials used in the manufacturing of said documents are a computer, computer printer, computer document scanner, typewriter, plastic laminate, a sealing mechanism, ink pads, blank alien registration cards and blank social security cards.

5.    Also based on my training and experience, I am aware that the common method for

manufacturing said documents is using a photo of an individual and using a scanner, scan the photo into the computer. The resulting scanned image is then "pasted" onto a digital template of a green card. This green card is then completed by printing it onto some type of computer paper or card stock. In the manufacture of fraudulent social security cards, this process is similar with the obvious exception of a photo or scanned image. In the manufacture of fraudulent social security cards, my experience has shown that there are at least two ways to manufacture fraudulent cards. The first way is to use a manipulable template stored on the computer. The template is easily altered by either copying a new name and number onto the document, or to type onto a blank template. It is also not uncommon to use a computer generated template, and subsequently using a typewriter to insert a name and number. Both methods are common. Once a fraudulent green card and or SSANC is printed out, and in order for the document to be completed, a signature and a "fingerprint" are placed on the document. Many times, this signature is scanned onto the document, and the fingerprint is, like the template itself, stored on the computer. The completion of the document consists of encasing the document in plastic laminate with a sealing mechanism. The sealing mechanism could be either a laminator, or a device such as an iron.

6.    This affidavit is based on my personal knowledge, information provided to me by other law enforcement officers and agents of this Service, as well as information provided to me by a Confidential Source ("CS"). This affidavit is not intended to set forth all of the information that I and other law enforcement personnel have learned during this investigation, but is submitted in support of a criminal complaint against VALDINA SANTOS .

7.    Over the course of several months in 2003 and 2004, your affiant received information from confidential source CS SA-598-BO regarding an individual who was selling and possibly manufacturing counterfeit documents in the Worcester, MA area. This individual, known as "Dina" was, per the CS, providing counterfeit documents in Worcester, Massachusetts for $130.00 per set, a set consisting of one counterfeit green card and one counterfeit social security card. CS also gave as a means of reaching "Dina", a cellular number, (508) 579-4024. This number was subpoenaed,

and subscriber information was returned for Valdina SANTOS with a P.O. Box of 2996, Worcester, MA.

8.      On August 09, 2004, CS SA-572-BO (hereinafter referred to as "CS1") placed a consensually monitored and recorded call to SANTOS at her phone number (508) 579-4024 to arrange a meeting during which he/she will attempt to negotiate a business relationship. This meeting was set to take place in the Framingham, MA area at approximately 6:30 p.m. on August 10, 2004.

9.      On August 10, 2004, at approximately 9:00 p.m., as previously agreed upon, CS1 placed a consensually monitored and recorded call to SANTOS. SANTOS told CS1 that she could meet him/her at the Mobil Station at the intersection of Route 9 and Route 85 in Ashland, MA[1] in 20 minutes. At approximately 9:05 p.m., your affiant and SS/A Dacunha searched CS1 and his/her vehicle for contraband/weapons. At approximately 9:10 p.m., your affiant, SS/A Dacunha, and SA McCarthy began escorting CS1 towards the Mobil station on Rt. 9. At approximately 9:17 p.m., CS1 pulled into the Mobil station and parked his/her vehicle. Moments after parking, two Brazilian males approached CS1's vehicle and began speaking to him/her in a friendly manner. At approximately 9:25 p.m., CS1 exited his/her vehicle and followed the two males towards two phone booths in the lot. At this time, a vehicle bearing the Massachusetts registration 64CD11 parked near the phone booths. Queries of SANTOS had indicated that this vehicle is in fact registered to Valdina A. SANTOS, of 406 Grafton Rd. Worcester, MA. At approximately 9:26 p.m., the lone female driver exited the vehicle and began speaking to CS1. Your affiant activated the KEL recording device at this time. At approximately 9:30 p.m., the meeting ended, and the female reentered her vehicle and pulled out of the gas station and headed onto Rt. 9 east towards Framingham, MA. Your affiant deactivated the KEL recording device at this time. CS1 proceeded towards the debriefing site with your affiant, SS/A Dacunha, and SA McCarthy.

10.     Upon debriefing, CS1 stated that SANTOS told CS1 that anytime he/she needed documents,

---

[1] Although Santos told CS1 that  gas station was located in Ashland, agents determined that the gas station was actually located on Route 9 in Southboro, MA.

to just call her and she would be willing to provide them. CS1 further stated that the number of documents did not seem to bother SANTOS in that CS1 told SANTOS that they would sometimes need 5 or 6 sets of counterfeit documents at a time, and this did not seem to bother SANTOS at all.

**THE FIRST PURCHASE**

11.    On August 18, 2004, at approximately 10:25 a.m., CS1 placed a consensually monitored and recorded phone call to SANTOS. The purpose of the call was to arrange a meeting to purchase four (4) sets counterfeit documents. CS1 immediately reached SANTOS and after brief small talk, spoke about the purchase of four (4) sets of counterfeit documents. After giving SANTOS the names of the four individuals and answering several questions about the individuals, SANTOS told CS1 that the person who made the documents only made them during the hours of 8:00 a.m. to 11:30 a.m., and she (SANTOS) was too busy with other business to meet him/her right away. SANTOS then told CS1 that she would call him/her back sometime before 5:00 p.m.. At approximately 11:28 a.m., CS1 placed another call to SANTOS to ask her if they could possibly get the documents done on this date. SANTOS told CS1 that the person who made the documents could not do them until the next morning, and that she could not come pick up the photos until later. SANTOS again told CS1 that she would call back before 5:00 p.m..

12.    At approximately 4:38 p.m., CS1 placed another consensually monitored and recorded call to SANTOS to tell her that he/she was in the area, and asked if she could meet soon. SANTOS asked CS1 where he/she was at the time, and CS1 responded that he/she was at home(during the first conversation with SANTOS, CS1 had told SANTOS that he/she lived in Southboro). SANTOS then told CS1 that she would be in the Marlboro area "soon", and she would give him/her a call. At approximately 6:12 p.m., SANTOS called CS1 back and told him/her that they could meet in about 20 minutes at the CVS near the Price Chopper grocery store on Route 20 in Marlboro. CS1 told SANTOS he/she'd be there and the call ended. At approximately 6:20 p.m., your affiant and SS/A Dacunha searched CS1 and his/her vehicle for contraband/weapons. At approximately 6:23 p.m., members of the Identity Fraud group began making their way towards the CVS.

4

13.    At approximately 6:45 p.m., your affiant, SS/A Ohlson, and GS Smith were set up in the general area of the CVS awaiting the arrival of CS1. Approximately five minutes later, SS/A Dacunha escorted CS1 into the parking lot at the CVS. At approximately 6:51 p.m., a green, Chrysler Cirrus bearing Massachusetts registration 64CD11 entered the parking lot and parked adjacent to CS1's vehicle. At approximately 6:53 p.m., SANTOS exited her vehicle and approached CS1's driver's side window and the two began speaking to each other. Your affiant activated the KEL recording device at this time. CS1 and SANTOS spoke for a few moments, exchanged the green card style photos that had been previously supplied by your affiant, and at approximately 6:56 p.m., terminated the meeting and SANTOS reentered her vehicle. Your affiant deactivated the KEL recording device at this time. CS1 immediately left the area proceeding towards a prearranged debriefing site. At approximately the same time CS1 was leaving the parking lot, SANTOS also began exiting the lot, and began following CS1. A mobile surveillance of her then ensued. SANTOS was surveilled as far as the 7-11 store on Broad and Lincoln streets when she executed a U-turn and departed the area. At this time, it appeared that SANTOS had stopped following CS1 and surveillance of her was terminated at that time.

14.    During the debriefing of CS1, at approximately 7:12 p.m., CS1 received a phone call from SANTOS during which she asked CS1 if he/she "had a surprise for her, because she had two daughters to raise." CS1 told SANTOS that he/she didn't understand her question. SANTOS then asked CS1 why he/she had gone to the 7-11 store, indicating that SANTOS was in fact following CS1. CS1 told SANTOS that he/she had a friend that lived near there. SANTOS then again said she hoped CS1 was not trying to set her up. CS1 further stated that he/she had felt that SANTOS was somewhat surveillance conscious, but didn't show any overt suspicion of him/her specifically. SANTOS also told CS1 that the person who was making the documents is female, and that she is "very busy," and works another job from 1:00 p.m. to 12:00 every day. SANTOS further agreed to meet CS1 at 9:00 a.m. the next morning. At approximately 9:00 p.m., SANTOS called CS1 once more to ask about one of the names on the back of one of the photos.

5

15.    On August 19, 2004, at approximately 8:30 a.m., your affiant searched CS1's vehicle for contraband/weapons. At approximately 8:45 a.m., members of Identity Fraud group made their way to the prearranged meet location at the CVS at 222 Boston Post Plaza. CS1 arrived in the parking lot at approximately 8:55 a.m., and a stationary surveillance ensued. At approximately 9:14 a.m., the green, Chrysler Cirrus bearing Massachusetts registration 64CD11 registered to SANTOS arrived in the area and SANTOS, the lone occupant motioned to CS1 to move to the back of the CVS lot. CS1 began driving around the area looking for SANTOS, but was unable to locate her. At approximately 9:18 a.m., SANTOS again called CS1 and told him/her to go back to the front of the parking lot to meet her. At approximately 9:20 a.m., CS1 parked his/her vehicle adjacent to SANTOS' vehicle and approached her driver's side window. At this time, your affiant activated the KEL recording device. SANTOS and CS1 engaged in conversation at this time, and spoke for several minutes. At approximately 9:25 a.m., the meeting ended and CS1 reentered his/her vehicle. Your affiant deactivated the KEL recording device at this time. SANTOS began departing the area, traveling westbound on Route 20 towards downtown Marlboro. A brief mobile surveillance ensued, following SANTOS to the overpass over I-495. At a prearranged debriefing location, CS1 stated that SANTOS was extremely surveillance conscious during this particular meeting, and again told CS1 further that she "had two daughters in college to take care of." CS1 relinquished to your affiant, custody of four (4) sets of counterfeit documents purchased from SANTOS. Also returned to CS1 by SANTOS were the four green card style photos provided by your affiant prior to the meeting.

16.    This evidence purchased consisted of the following: 1) green card bearing the name PINTO, Mateus J., DOB: 02/10/74 and alien registration number A078054926. 2) social security card bearing the name Mateus J. Pinto and the number: 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. 3) green card style photo provided earlier by your affiant bearing the same photo as depicted on the aforementioned green card. On the reverse of the photo was the name Mateus J. Pinto and a date, Feb 10-1974. This information was handwritten by SS/A Dacunha prior to the meeting. 4) green card bearing the name Costa, Francisco, DOB: 11/17/72 and alien registration number A090650482. 5) social security card

6

bearing the name Francisco Costa and the number: 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. 6) green card style photo provided earlier by your affiant bearing the same photo as depicted on the aforementioned green card. On the reverse of the photo was the name Francisco Costa and a date, Nov 17-1972. This information was handwritten by SS/A Dacunha prior to the meeting.   7) green card bearing the name Goncalves, Dionicio, DOB: 11/10/56 and alien registration number A090650483. 8) social security card bearing the name Dionicio Goncalves and the number: 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.   9) green card style photo provided earlier by your affiant bearing the same photo as depicted on the aforementioned green card. On the reverse of the photo was the name Dionicio Goncalves and a date, 10-11-1956. This information was handwritten by your affiant prior to the meeting. 10) green card bearing the name Magalhaes, Jose, DOB: 08/15/78 and alien registration number A078054925. 11) social security card bearing the name Jose Magalhaes and the number: 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. 12) green card style photo provided earlier by your affiant bearing the same photo as depicted on the aforementioned green card. On the reverse of the photo was the name Jose Magalhaes and a date, Augusto 15-1978. This information was handwritten by SS/A Dacunha prior to the meeting.   When given to CS1 by SANTOS, the aforementioned documents and photos were in a greeting card sized, white envelope.   Queries of the ICE indices were performed, and the following was found:  the alien registration numbers, A078054925 and A078054926 are valid alien registration numbers assigned to two Saudi Arabian nationals. A090650482 and A090650483, are also valid numbers; A090650482 being assigned to a Brazilian national, and A090650483 assigned to a naturalized United States citizen.

**THE SECOND PURCHASE**

17.    On September 15, 2004, at approximately 8:18 a.m. CS1 placed a consensually monitored and recorded phone call to SANTOS at her cellular phone (508)579-4024 to arrange a meeting to purchase five(5) sets of counterfeit documents. CS1 and SANTOS agreed to meet in the area of 19 Hastings St., Marlboro, Massachusetts at approximately 9:15 a.m..  At approximately 8:45 a.m., members of SAC/Boston Fraud group made their way to the prearranged meet location and at approximately 8:57 a.m., CS1 also began making his/her way to the area. At approximately 9:04

a.m., CS1 arrived on scene, and parked at the easternmost area of the parking lot facing west. At approximately 9:09 a.m., SANTOS called CS1 and stated that she was about 2 minutes away. At approximately 9:14 a.m., SANTOS arrived in the area and parked adjacent to the CS1's vehicle. SANTOS was driving the 1995 green Chrysler Cirrus with Mass registration 64CD11 which is registered to her, and was accompanied by an unknown Brazilian male approximately 25 years of age. At approximately 9:15 a.m., SANTOS and CS1 began speaking through their respective windows, and your affiant activated the KEL recording device. CS1 and SANTOS spoke briefly and CS1 handed the green card style photos to SANTOS. These photos had been provided to CS1 earlier by your affiant, and had names and dates of birth written on the backs by an agent in the Fraud Group. At approximately 9:21 a.m., the conversation ended and SANTOS began pulling out of the parking lot. Your affiant deactivated the KEL recording device at this time. SANTOS exited the parking lot and turned left onto Lincoln St. traveling east towards Marlboro Center.

18.    At a prearranged debriefing location, CS1 stated that SANTOS again seemed extremely surveillance conscious in that she actually told CS1 that she didn't know why she trusted him/her because she had a "real bad feeling about it". During this meeting, CS1 introduced the idea of another person, "Renata, the niece of his/her boss" by saying that his/her boss was sending him/her (CS1) to work further up north, and "Renata" would be dealing with her from this point forward. SANTOS and CS1 further agreed that he/she could pick up the completed documents at or shortly after 6:00 p.m. this evening.

19.    On September 15, 2004, at approximately 5:36 p.m., CS1 placed a consensually monitored and recorded call to SANTOS at her cellular phone number: (508)579-4024 to find out if the documents ordered earlier were complete, and to find out when they could meet. SANTOS told CS1 that she would call him/her back in approximately 40 to 50 minutes.

20.    At approximately 6:15 p.m., SANTOS called the CS1 and the call was consensually monitored and recorded. During this conversation, SANTOS asked CS1 where he/she was, and said that she was "at the 7-11 store". CS1 told SANTOS that he/she could be there in 10 minutes. Your

affiant searched CS1 and his/her vehicle for contraband/weapons. At approximately 6:20 p.m., members of SAC/Boston Fraud group were set up in the area of Broad and Lincoln St., the intersection where the 7-11 store was located. At approximately 6:25 p.m., CS1 pulled his/her vehicle into the 7-11 parking lot. At approximately 6:27 p.m., SANTOS walked across Broad Street from a multi-storied apartment building at 85 Broad St., on the corner. SANTOS began speaking to CS1 through his/her open car window, and your affiant activated the KEL recording device at this time. SANTOS and CS engaged in conversation briefly, and SANTOS handed CS1 a white envelope. At approximately 6:29 p.m., the meeting terminated, your affiant deactivated the KEL recording device and CS1 began driving back towards the prearranged debriefing location. SANTOS was observed walking back towards the apartment building at 85 Broad St. After walking back towards the apartment building, she entered the green Chrysler Cirrus registered to her, and began traveling westbound on Route 20 towards I-495. She was seen merging onto the interstate traveling north on I-495.

21.    At a prearranged debriefing location, CS1 stated that SANTOS was not as nervous during this meeting, but seemed somewhat relaxed. CS1 further stated that she simply handed him/her the documents and took the money and the meeting ended. CS1 relinquished to your affiant, custody of an envelope containing five (5) sets of counterfeit documents purchased from SANTOS. Unlike the previous meeting, the green card style photos provided earlier, were not returned to CS1 at the conclusion of the transaction.

22.    The evidence purchased consisted of the following: 1) green card bearing the name SILVA, Maria Francisca, DOB: 01/12/75 and alien registration number A030132061. 2) social security card bearing the name Maria Francisca Silva and the number: 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. 3) green card bearing the name PINTO, Manuela Souza, DOB: 06/15/80 and alien registration number A030132062. 4) social security card bearing the name Manuela Souza Pinto and the number: 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. 5) green card bearing the name SOUZA, Antonio, DOB: 07/22/66 and alien registration number A030132063. 6) social security card bearing the name Antonio Souza and the number: 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. 7) green card

9

bearing the name ALMEIDA, Jose, DOB: 09/22/73 and alien registration number A030132064. 08)
social security card bearing the name Jose Almeida and the number: 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. 09) green card
bearing the name MAGALHAES, Joao, DOB: 03/18/52 and alien registration number A030132065.
10) social security card bearing the name Joao Magalhaes and the number: 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. When given
to CS1 by SANTOS, the aforementioned documents were provided in a greeting card sized white
envelope. The alien registration numbers, A030132061, A030132062, A030132063, A030132064,
and A030132065 that appear on the green cards were queried in the ICE indices, and revealed that
all numbers are invalid numbers and are not assigned.

**THE THIRD PURCHASE**

23.    On September 22, 2004, at approximately 4:00 p.m., CS SA-593-BO(hereinafter referred to
as CS2) placed an unrecorded phone call to Valdina SANTOS at her cellular phone (508)579-4024
to arrange a meeting to purchase seven (7) sets of counterfeit documents from her. SANTOS agreed
to meet CS2 on the following day. SANTOS told CS2 that on the following day, she would call at
approximately 2:30 p.m., and they could meet at the "Walmart in Westborough" at approximately
3:00 p.m.

24.    On September 23, 2004, at approximately 4:30 p.m., CS2 placed a consensually monitored
and recorded call to SANTOS telling her that he/she was nearby, and could meet her shortly. At this
time, SANTOS told CS2 that they could meet at the U-Haul Store on Rt. 20 in Marlboro,
Massachusetts.  At approximately 4:50 p.m., CS2 placed another consensually monitored and
recorded phone call to SANTOS telling her that he/she was about five minutes away. At this time,
members of the Identity Fraud Group had positioned themselves in the area of the U-Haul Store on
Rt. 20.  At approximately 5:00 p.m., CS2 was on scene at the U-Haul Store, and at approximately
5:04 p.m., SANTOS arrived and parked adjacent to CS2's vehicle. SANTOS was driving the 1995
green Chrysler Cirrus with Mass registration 64CD11, which is registered to her. At this time, both
the KEL recording device and a video recording device were activated. CS2 exited his/her vehicle,
and approached SANTOS' driver's side door where the two engaged in brief conversation. CS2

10

handed SANTOS the seven green card style photos that had been provided earlier by your affiant. Prior to the meeting, CS2 had written names and dates of birth on the backs of the photos. At approximately 5:09 p.m., the conversation ended and as CS2 reentered his/her vehicle, SANTOS began pulling out of the parking lot. The KEL recording device and video recording device were deactivated at this time. SANTOS exited the parking lot and turned right onto Rt. 20/W. Main traveling east towards Marlboro Center. A mobile surveillance of SANTOS ensued at this time, and SANTOS was seen pulling her vehicle into a driveway at 159 W. Main St. at approximately 5:10 p.m.. At approximately 5:11 p.m., SANTOS was again seen on the front porch of 159 W. Main St.

25.    At a prearranged debriefing location, CS2 stated that SANTOS seemed relaxed and comfortable with him/her. CS2 further stated that SANTOS had said the documents would be ready on the following day at approximately 10:00 a.m.. CS2 told SANTOS that even though the documents would be ready at 10:00 a.m., he/she would have to pick them up later due to previously planned errands. SANTOS told CS2 anytime after 10:00 a..m. was fine and CS2 could just call her when ready.

26.    On September 24, 2004, at approximately 12:08 p.m., the CS2 placed a consensually monitored and recorded call to SANTOS telling her that he/she was nearby, and could meet her shortly. At this time, SANTOS told CS2 that they could meet at the U-Haul Store on Rt. 20 in Marlboro, Massachusetts, as they had on the previous day. At approximately 12:30 p.m., members of the Identity Fraud Group had positioned themselves in the area of the U-Haul Store on Rt. 20. At approximately 12:35 p.m., as your affiant was positioning herself in the area of the U-Haul store, SANTOS was observed at the Mobil gas station several yards east of the U-Haul store. SANTOS was in the green Chrysler Cirrus with MA registration 64CD11 that is registered to her. At approximately 12:39 p.m., CS2 arrived on scene and parked directly behind SANTOS' vehicle at the Mobil gas station. SANTOS immediately exited her vehicle, and approached CS2's vehicle. Your affiant activated the KEL recording device at this time. The two engaged in conversation at this time, and CS2 began counting out $910.00 in official United States funds provided earlier on

this date by your affiant. SANTOS and CS2 exchanged the money for the documents purchased. SANTOS and CS2 spoke for approximately 20 additional minutes, and at 1:01 p.m., the meeting ended and SANTOS reentered her vehicle. Your affiant deactivated the KEL recording device at this time. SANTOS exited the Mobil parking lot and immediately turned left traveling west towards I-495. A mobile surveillance of SANTOS ensued, and SANTOS was observed pulling in to the Dunkin Donuts parking lot approximately one quarter mile west of the Mobil gas station.

27.    At a prearranged debriefing location, CS2 stated that SANTOS stated that she doesn't actually make the documents, but is only a "deliverer." SANTOS further stated that she makes all the documents for the people who stay at her friends house. CS2 relinquished to your affiant, custody of the evidence purchased.

28.    The evidence purchased consisted of the following:  1) green card bearing the name XAVIER, Luiz Jose, DOB: 06/09/75 and alien registration number A040243080. 2) social security card bearing the name Luiz Jose Xavier and the number: 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.  3) green card bearing the name DASILVA, Claudio Azevedo, DOB: 10/11/75 and alien registration number A040243076. 4) social security card bearing the name Claudio Azevedo Da Silva and the number: 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. 5) green card bearing the name SOUZA, Andre Pereira, DOB: 02/01/71 and alien registration number A040243078. 6) social security card bearing the name Andre Pereira Souza and the number: 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. 7) green card bearing the name CARVALHO, Ana Maria, DOB: 09/07/75 and alien registration number A040243077. 08) social security card bearing the name Ana Maria Carvalho and the number: 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.  09) green card bearing the name GOMES, Altair Souza, DOB: 06/12/72 and alien registration number A040243083.  10) social security card bearing the name Altair Souza Gomes and the number: 364068-3433. 11) green card bearing the name SILVA, Jose Mariano, DOB: 04/17/76 and alien registration number A040243081. 12) social security card bearing the name Jose Mariano Silva and the number: 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. 13) green card bearing the name PAXECO, Olindo Silvio, DOB: 08/02/60 and alien registration number A040243079. 14) social security card bearing the name Olindo Silvio Paxeco and the number: 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. When given

to CS2, the aforementioned documents were in a greeting card sized white envelope, and like the previous purchase, the green card style photos provided earlier were not returned. The alien registration numbers, A040243076, A040243077, A040243078, A040243079, A040243080, A040243081, and A040243083 that appear on the green cards were queried in the ICE indices, and revealed that all numbers are invalid numbers and are not assigned. On the reverse of the counterfeit green cards, in a location that a valid green card would show the alien number, different alien numbers are listed. These numbers are as follows: A091940003 through A091940009, consecutively. These numbers were also queried in the ICE indices. These numbers are similarly invalid and unassigned.

**THE FOURTH PURCHASE**

29.    On October 27, 2004, CS2 arranged a meeting with SANTOS for the following day. On October 28, 2004, at approximately 6:38 p.m., CS2 placed a consensually monitored and recorded phone call to Valdina SANTOS confirming the meeting to purchase four (4) sets of counterfeit documents. CS2 informed SANTOS that he/she would be at the Days Inn hotel on Boston Turnpike Rd. in Shrewsbury, MA. SANTOS agreed to meet CS2 at the hotel, but gave no specific arrival time.

30.    On October 28, 2004, at approximately 6:48 p.m., members of the Identity Fraud group observed SANTOS' green Chrysler Cirrus parked outside of 20 Imperial Rd. in Worcester, MA. This house is owned by Gerald F. Gallo, and although SANTOS' residence per her driver's license is 406 Grafton St. it appears that she is living at this address, as her vehicle has been observed parked at this residence on several occasions at various times of day. At approximately 6:55 p.m., SANTOS' vehicle was observed leaving the residence at 20 Imperial Rd. but the direction of travel was not ascertained. At approximately 7:06 p.m., CS2 placed another consensually monitored and recorded call to SANTOS to give SANTOS the hotel room phone number; SANTOS stated that she was driving, and couldn't write the number down. At approximately 7:10 p.m., CS2 placed another consensually monitored and recorded call to SANTOS, who at this time, said she would be at the

hotel in "12 minutes". SANTOS further told CS2 that she had to go to Walmart to meet someone who was coming from "far away". At approximately 8:05 p.m., SS/A Reeves called your affiant from the "Walmart parking lot", and stated that he observed SANTOS in the parking lot sitting in he car.

31.    At approximately 8:21 p.m., SANTOS entered the hotel parking lot and parked her car. At approximately 8:25 p.m., SANTOS entered hotel room 144 and began engaging in conversation with CS2. The KEL recording device and video recording device that were being monitored in the adjoining room were activated at this time. CS2 gave SANTOS four green card style photos that had been provided earlier by your affiant. Prior to the meeting, agents of the Identity Fraud group had written names and dates of birth on the backs of the photos. At approximately 8:30 p.m., the conversation ended and SANTOS left the hotel room and went back to her car. At approximately 8:31 p.m., SANTOS was observed leaving the hotel parking lot and traveling westbound on Route 9(Boston Turnpike Rd.). The KEL recording device and video recording device being monitored in the adjoining room were deactivated at this time. SANTOS was observed parking her vehicle at 20 Imperial Rd. at approximately 8:41 p.m..

32.    During the debriefing, CS2 stated that SANTOS said the documents would be ready at 8:00 a.m. the next morning, but not any earlier, because she(SANTOS) was not going to "see the guy until 11:00 p.m.", and they couldn't be ready any earlier. They agreed that CS2 would call SANTOS on the following day when he/she was ready to pick up the completed documents.

33.    On October 29, 2004, at approximately 2:45 p.m., CS2 placed a consensually monitored and recorded call to SANTOS to let her know that he/she was available to meet with and accept delivery of the four (4) sets of documents ordered on the previous day. SANTOS and CS2 had met at the Days Inn hotel on Boston Turnpike Rd. in Shrewsbury, MA on the previous day, and had agreed that CS2 would call SANTOS when he/she was ready to pick up the documents. On this date, during preliminary preparations, members of the Identity Fraud group had observed SANTOS' vehicle, a green 1995 Chrysler Cirrus bearing MA registration 64CD11 parked at 20 Imperial Rd. Worcester,

14

MA. During the phone call, SANTOS told CS2 that she would be at the hotel in eighteen (18) minutes.

34. At approximately 3:01 p.m., members of the Identity Fraud Group, having surveilled SANTOS as she traveled eastward from Worcester, reported that she would probably be at the hotel within moments. It was also reported that SANTOS had a passenger in the vehicle, believed to be female, but the gender was not confirmed. At approximately 3:04 p.m., SANTOS was observed driving into the hotel parking lot, and driving around to the back. SANTOS parked adjacent to CS2's vehicle and now confirmed, accompanied by another unknown female, exited the vehicle and entered the hotel. At approximately 3:05 p.m., the two women entered room 144 and began engaging in conversation. From the adjoining room, your affiant activated the KEL recording device and video recording device at this time. As the two engaged in conversation, CS2 began counting out $520.00 in official United States funds provided earlier by your affiant. SANTOS and CS2 exchanged the money for the documents purchased. The green card style photos had been provided earlier by your affiant, and had names and dates of birth written on the backs by the members of the Identity Fraud group.

35. The unknown woman accompanying SANTOS was introduced as "Dora", and she told CS2 that she was the owner of "the second house on Shamrock St." in Worcester, MA. "Dora" LNU also gave CS2 a piece of paper with her name, phone number and address on it. At approximately 3:17 p.m., SANTOS received a phone call, and the three women engaged in further social conversation. The meeting terminated at approximately 3:21 p.m., and at this time, your affiant deactivated the KEL recording device and video recording device being monitored in the adjoining room. At approximately 3:25 p.m., the two women, having exited the hotel room and reentered SANTOS' vehicle, began exiting the hotel parking lot. At approximately 3:35 p.m., following a loose surveillance, the two women were seen entering a grocery store called "Gol" Supermarket, located on Rt. 9 (Boston Turnpike Rd.) in Shrewsbury, MA.

36. During debriefing, CS2 stated that SANTOS spoke of a Portuguese man living in Brazil who

15

could provide authentic Portuguese passports for a fee of $7,000.00. She also told CS2 that she would be speaking to that individual later that night, and would call CS to let her know about it. CS2 relinquished to your affiant, custody of the evidence purchased. The evidence purchased consisted of the following: 1) green card bearing the name SANTOS, Antonio F., DOB: 09/18/80 and alien registration number A538771967. 2) social security card bearing the name Antonio F. Santos and the number: 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. 3) green card bearing the name MATOS, Cecilia, DOB: 04/13/75 and alien registration number A538771965. 4) social security card bearing the name Cecilia Matos and the number: 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. 5) green card bearing the name SANTANA, Margarida DOB: 06/21/78 and alien registration number A538771964. 6) social security card bearing the name Margarida Santana and the number: 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. 7) green card bearing the name MAGALHAES, Fatima, DOB: 12/28/66 and alien registration number A538771966. 08) social security card bearing the name Fatima Magalhaes and the number: 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. The aforementioned documents were accompanied by the green card style photos that were provided earlier by your affiant. The alien registration numbers, A538771964, A538771965, A538771966, and A538771967 that appear on the green cards were subsequently queried in the ICE indices. Queries revealed that all numbers are invalid numbers and are not assigned. On the reverse of the counterfeit green cards, in a location that a valid green card would show the alien number, different alien numbers are listed. The same number: A091940009, appears on all four counterfeit green cards. This number was also queried in the ICE indices, and indicates that the number is similarly invalid and unassigned.

**THE FIFTH PURCHASE**

37.    On November 20, 2004, at approximately 6:41 p.m., CS2 placed a consensually monitored and recorded call to SANTOS telling her that he/she needed to purchase one set of documents. The two agreed to meet on the following day after CS2 called SANTOS letting her know when CS2 could meet.

38.    On November 21, 2004, at approximately 11:00 a.m., CS2 received a call from SANTOS. SANTOS told CS2 that she would meet him/her at the UHAUL store on Rt. 20 in Marlboro, MA.

SANTOS and CS2 have met at this location previously. CS agreed to meet her there in approximately 30 minutes, and SANTOS said she'd be there in fifteen minutes. Members of the Identity Fraud group began making their way to the meet location at this time. At approximately 11:25 a.m., your affiant observed the 1995 Green Chrysler Cirrus bearing Massachusetts registration 64CD11 parked in the Mobil Gas station parking lot. Moments later, CS2 pulled into the Mobil parking lot and parked his/her vehicle adjacent to SANTOS's. Your affiant activated the KEL recording device at this time.

39.    At approximately 11:31 p.m., CS2 and SANTOS began engaging in conversation and CS2 handed SANTOS the green card style photo. On the back of the photo previously provided by your affiant, was written a name, Juraci Pereira and a date, 07-14-76. This information was written by SS/A Dacunha prior to the meeting. At approximately 11:32 a.m., SANTOS began exiting the parking lot and turned right onto Rt. 20 East towards Marlboro Center. The KEL recording device was deactivated at this time. A mobile surveillance of SANTOS ensued at this time, and at a prearranged debriefing location, CS2 stated that SANTOS had told him/her that they could meet at the same location at 1:30 p.m. for the pickup of the completed documents. SANTOS further told CS2 that she had to go do some more business in Framingham.

40.    SANTOS was surveilled to 97/99 Mansfield St., Framingham, MA. At approximately 11:56 a.m., SANTOS was seen parking her vehicle outside of the residence at 97 Mansfield St., and at approximately 12:05 p.m., was seen exiting the door of 97 Mansfield St. carrying some kind of bag. SANTOS reentered her vehicle and traveled westward on Mansfield towards Rt. 126. Members of the Identity Fraud Group maintained a mobile surveillance of SANTOS as she traveled back to Worcester, Massachusetts.

41.    At approximately 12:44 p.m., SANTOS parked her vehicle outside of what appeared to be both a bakery, and a multi family residence at 107 Hamilton St. in Worcester, Massachusetts. Approximately one minute later, SS/A Reeves observed SANTOS entering the door marked "107." Above the entranceway on the front of the building was a sign reading, "East Side Bakery". A

stationary surveillance ensued at this point, and at approximately 1:00 p.m., SS/A Dacunha entered the building under the guise of going to the bakery. SS/A Dacunha reported that the bakery was actually neither occupied, nor open to the public at this time. No other persons entered through the main door while SANTOS was inside the building.

42.    At approximately 1:29 p.m., CS2 received a call from SANTOS. This call was consensually monitored and recorded. SANTOS told CS2 that she would meet him/her at the UHAUL store as planned, in 30 minutes. SS/A Dacunha was at this time inside the building at 107 Hamilton, and for the purposes of having him hear SANTOS' phone ring, CS2 placed a second consensually monitored and recorded call to SANTOS. At approximately 1:30 p.m., SANTOS' phone rang, and SS/A Dacunha, on the third floor of the building, heard the phone ring, footsteps, and then SANTOS speaking with an unknown male. At this time, at approximately 1:32 p.m., SS/A Dacunha came down the stairs and observed SANTOS exiting the second floor apartment. She was accompanied by the unknown male, but was not observed until they exited the door. The two exited the main door, where SS/A Dacunha lost sight of them. SA McCarthy observed SANTOS going towards her vehicle, and the unknown male walking the other direction. The male is described as approximately thirty years of age, medium height, with dark hair and medium complexion.

43.    At approximately 1:33 p.m., members of the Identity Fraud group began a mobile surveillance of SANTOS as she traveled back towards the UHAUL store in Marlboro, MA. At approximately 1:55 p.m., SANTOS drove her vehicle into the Mobil parking lot and parked adjacent to CS2's vehicle. The two began speaking, and the KEL recording device was activated by your affiant at this time. Through the open car windows, CS2 exchanged the $130.00 in official United States funds for the counterfeit documents from SANTOS. The meeting terminated at approximately 1:56 p.m., and your affiant deactivated the KEL recording device at this time. At approximately 1:56 p.m., SANTOS exited the parking lot traveling eastbound on Rt. 20.

44.    As a mobile surveillance of SANTOS again ensued, CS2 was debriefed at a prearranged location. According to CS2, SANTOS was in a hurry, and CS2 speculated that she was going to

deliver the other order from earlier on this date. CS2 relinquished custody to your affiant, the following evidence: 1) green card bearing the name Juraci Pereira, DOB: 07/14/76 and alien registration number A397041171, 2) Social Security Card bearing the name Juraci Pereira and the number: 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. 3) green card style photo bearing the name Juraci Pereira and a date, 07-14-76 handwritten on the back of the photo. SS/A Dacunha had written this on the photo prior to the meeting.

45.    The aforementioned documents were accompanied by the green card style photos that were provided earlier by your affiant. The alien registration number, A397041171 that appears on the green card was queried in the ICE indices. Queries revealed that the number is an invalid number and not assigned. On the reverse of the counterfeit green card, in a location that a valid green card would show the alien number, a different alien number is shown. The number: A397041166 was also queried in the ICE indices, and is similarly invalid and unassigned.

46.    SANTOS was surveilled by members of the Identity Fraud group, and at approximately 2:20 p.m., was seen entering the residence at 97 Mansfield, Framingham, MA. At approximately 2:22 p.m., SANTOS was observed leaving the residence, reentering her vehicle, and was again surveilled by members of the Identity Fraud group until reaching 226 Dewey St., 1st floor apartment in Worcester, MA at 3:11 p.m.. SANTOS was seen meeting with an unknown female at that time. SANTOS remained at that location until 3:18 p.m., when she left and went directly back to 107 Hamilton St., arriving at approximately 3:36 p.m..

47.    On December 6, 2004, CS2 placed a call to SANTOS telling her that he/she needed to purchase four sets of documents. The two discussed meeting on December 8, 2004, at the Worcester City Motel in Shrewsbury, MA. Also, on December 6, 2004, agents obtained a federal search warrant for the premises of 107 Hamilton Street, second floor apartment in Worcester, MA.

48.    On December 7, 2004, CS2 placed a call to SANTOS and confirmed the meeting location.

49.    On the morning of December 8, 2004, CS2 placed a call to SANTOS to confirm the time and place for the meeting. Agents set up surveillance in the area of the Worcester City Motel located in

Shrewsbury, MA. SANTOS called CS2 approximately twenty minutes later and advised that she was was on her way and would be there shortly. A few minutes later, agents observed SANTOS arrive in the above described 1995 Green Chrysler Cirrus and meet with CS2. SANTOS took the photographs from CS2 and arranged to meet in about an hour and a half. SANTOS left the area, proceeding west on Route 9 to Worcester, MA.

50.    At approximately 9:15 a.m., SANTOS was stopped in the area of Prescott Street in Worcester MA, and was arrested. Agents recovered the following eight fraudulent documents. Each set contained a fraudulent social security card, fraudulent green card. The green cards had the scanned image of the photographs previously supplied by CS2 to SANTOS. Agents also recovered the photographs supplied by CS2 to SANTOS.

51.    SANTOS was advised of her <u>Miranda</u> rights in Portugese by a Portugese speaking ICE agent. SANTOS agreed to speak with agents. SANTOS identified herself as VALDINA ARIES SANTOS, and admitted to selling all of the fraudulent identification documents. Among other things, SANTOS stated that she got the documents from a person named "Frank" who made the fraudulent documents for her. According to SANTOS, "Frank" made all of the documents that she sold. "Frank" used to make the documents at an apartment located on the second floor of 107 Hamilton Street, but "Frank" recently moved to a new location at 23 Hemans Street, apartment 12 in Worcester, MA.

52.    Agents went to the address and spoke with Warley DeSouza, a resident of that apartment. Mr. DeSouza was cooperative and let the agents into the apartment. As agents entered the apartment they observed a paper cutter in one of the bedrooms. Mr. DeSouza stated that he was not "Frank," that he had a roommate named Frank who had stepped out. Mr. DeSouza stated that he was on the lease, and signed a written consent, permitting agents to search the apartment. In one of the bedrooms, agents found among other things a computer with a scanner / printer, a trash can filled with remnants of fraudulent documents, and a large amount of U.S. currency. Agents recovered a passport in the name of Frank Da Silva with a photograph and a counterfeit green card.

53.    A short time later, FRANK MACHADO DA SILVA returned to the apartment and was arrested. Agents advised DA SILVA of his <u>Miranda</u> rights in both Portugese and in English. DA SILVA admitted to making the fraudulent documents for SANTOS. DA SILVA stated that SANTOS paid him $30 per set. Each set included the false green cards and social security cards.

### CONCLUSION

54.    Based on the foregoing, I believe that there is probable cause to believe VALDINA ARIES SANTOS beginning from on or about August 19, 2004, and continuing through on or about December 8, 2004, did knowingly and without lawful authority, transfer and attempt to transfer false identification documents, in violation of Title 18 U.S.C. § 1028(a)(2), and did use and sell and attempt to use and sell as true and genuine, false and forged documentary evidence required or authorized by law relating to the registry of aliens in false naturalization, citizenship and registry documents in violation of 18 U.S.C. § 1426(b).

55.    Based on the foregoing, I also believe that there is probable cause to believe that FRANK MACHADO DA SILVA beginning on or about August 19, 2004, and continuing through on or about December 8, 2004, did, knowingly and without lawful authority, produce and transfer false identification documents, in violation of Title 18 U.S.C. § 1028(a)(1) and (a)(2).

**Nicole M. Cosola**
**Senior Special Agent**
**Department of Homeland Security**
**Immigration and Customs Enforcement**

**Sworn and subscribed to me this** 8th **day of December, 2004.**

**CHARLES B. SWARTWOOD, III**
**United States Magistrate Judge**

21